The **TORRINGTON COMPANY**, Plaintiff,

**Federal–Mogul Corporation, Plaintiff–Intervenor,**

v.

**UNITED STATES, Defendant,**

**SKF USA Inc. and SKF GmbH; GMN Georg Muller Nurnberg AG; NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH; Caterpillar Inc.; FAG Kugelfischer Georg Schafer KGaA; INA Walzlager Schaeffler KG and INA Bearing Company, Inc.; Messerschmitt–Boelkow–Blohm, GmbH and MBB Helicopter Corporation, Defendant–Intervenors.**

Court No. 91–08–00567.

United States Court of International Trade.

Oct. 21, 1994.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Myron A. Brilliant, Geert De Prest, Margaret E.O. Edozien, Robert A. Weaver, David Scott Nance and Amy S. Dwyer, for plaintiff The Torrington Co.

Frederick L. Ikenson, P.C. Frederick L. Ikenson, J. Eric Nissley and Joseph A. Perna, V, for plaintiff-intervenor Federal–Mogul Corp.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation

Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Asst. Director, and Jane E. Meehan (John D. McInerney, Sr. Counsel, Dean A. Pinkert, Stephen J. Claeys, Douglas S. Cohen and Thomas H. Fine, Attorney–Advisors, Office of the Chief Counsel for Import Administration, U.S. Dept. of Commerce, of counsel), for defendant.

Howrey & Simon, Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Juliana M. Cofrancesco and Thomas Trendl, for defendant-intervenors SKF USA Inc. and SKF GmbH.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell and Philip S. Gallas, for defendant-intervenor GMN Georg Muller Nurnberg AG.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald, for defendant-intervenors NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH.

Powell, Goldstein, Frazer & Murphy, Richard M. Belanger and Neil R. Ellis, for defendant-intervenor Caterpillar Inc.

Grunfeld, Desiderio, Lebowitz & Silverman, Max F. Schutzman, David L. Simon, Andrew B. Schroth and Matthew L. Pascocello, for defendant-intervenor FAG Kugelfischer Georg Schafer KGaA.

Arent Fox Kintner Plotkin & Kahn, Stephen L. Gibson and Eleanor Pelta, for defendant-intervenors INA Walzlager Schaeffler KG and INA Bearing Co., Inc.

Rogers & Wells, William Silverman and Ryan Trainer, for defendant-intervenors Messerschmitt–Boelkow–Blohm, GmbH and MBB Helicopter Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiff-intervenor Federal–Mogul Corporation ("FMC") and defendant-intervenors SKF USA Inc. and SKF GmbH ("SKF") challenge the Department of Commerce, International Trade Administration's ("Commerce") redetermination on remand filed in this case, Final Results of Redetermination Pursuant to Court Remand, *Torrington Co.*

*v. United States,* 850 F.Supp. 12 (CIT 1994) and 853 F.Supp. 446 (CIT 1994) ("Final Results"). Specifically, FMC contests as unsupported by substantial evidence and not in accordance with law Commerce's circumstance of sale ("COS") adjustment and exporter's sales price ("ESP") offset to foreign market value ("FMV") for pre-sale freight when United States Price ("USP") is based on ESP. SKF contests as unsupported by substantial evidence and not in accordance with law Commerce's methodology for determining whether pre-sale freight is a direct or indirect expense when USP is based on purchase price ("PP").

### Background

In *Torrington Co. v. United States,* 18 CIT ——, 850 F.Supp. 12 (1994), the Court remanded this case ordering Commerce to determine whether Commerce has statutory authority to adjust FMV, calculated using PP, for pre-sale inland freight in light of *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States ("Ad Hoc"),* 13 F.3d 398 (Fed.Cir.1994).

Commerce filed the Final Results on June 23, 1994 and FMC and SKF contest the Final Results.

### Discussion

■ Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988); *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

FMC asserts that a dumping margin calculated when USP is based on ESP will be smaller than a dumping margin in a PP situation because, although home market pre-sale freight is deducted from FMV in an ESP situation, it is not deducted in PP comparisons. Specifically, FMC states the dis-

tortion of dumping margins arises from Commerce's use of the ESP offset when pre-sale freight is found to be an indirect expense, pursuant to 19 C.F.R. § 353.56(b)(2). *Comments of Federal–Mogul Corporation on the Final Results of Redetermination Pursuant to Court Remand ("FMC's Comments")* at 6–13.

SKF asserts that Commerce erred in denying pre-sale movement expenses incurred on PP transactions. Specifically, SKF objects to the methodology adopted by Commerce to determine whether pre-sale freight expenses are direct or indirect in a purchase price comparison. *Defendant–Intervenors' Comments Regarding Redetermination on Remand Issued on June 23, 1994 ("SKF's Comments")* at 1–4.

The Court remanded this issue with these instructions:

It is a cardinal rule of administrative law that an agency should be allowed to decide an issue for itself before a court addresses that issue. (Citation omitted.) This Court agrees with the ITA that it should be given the opportunity to address this issue first in light of the Federal Circuit's decision in *Ad Hoc Comm.*

. . . .

Therefore, this case is remanded to the ITA to allow the ITA to determine whether it has statutory authority to adjust FMV, calculated using purchase price, for pre-sale inland freight in light of *Ad Hoc Comm.*

*Torrington Co.,* 18 CIT at ——, 850 F.Supp. at 16.

On remand, Commerce decided that, in light of *Ad Hoc,* it can no longer deduct home market pre-sale freight expenses from FMV pursuant to its inherent power to fill gaps in the antidumping duty statute. Instead, when USP is based on purchase price, Commerce will adjust for home market pre-sale freight pursuant to the COS provision of 19 C.F.R. § 353.56 where the expense is directly related to the home market sales under consideration (a direct expense). To determine whether pre-sale freight is a direct expense, Commerce will consider whether the pre-sale warehousing expense is shown to be a direct

expense. If the pre-sale warehousing constitutes a direct expense, Commerce will deem the pre-sale freight expense incurred in bringing the merchandise to the warehouse a direct expense as well. When USP is based on ESP, Commerce will use the COS adjustment in the same manner and will, additionally, adjust for any pre-sale freight charges found to be indirect selling expenses under the ESP offset provision, 19 C.F.R. § 353.56(b)(1) and (2). *Defendant's Response to the Comments Filed by Federal–Mogul Corporation and SKF U.S.A. et al., on the Final Results of Redetermination Pursuant to Court Remand* at 1–12.

In the Final Results at issue, Commerce treated pre-sale freight as indirect expenses and implemented ESP offset adjustments to FMV with respect to ESP sales. *Id.*

■ The fact that a dumping margin may differ depending upon whether USP is calculated based on ESP or PP and Commerce's authority to use an ESP offset for pre-sale freight in ESP transactions when no adjustment is made to FMV for pre-sale freight in PP transactions was explicitly upheld by the Federal Circuit in *Smith–Corona Group, Consumer Prods. Div., SCM Corp. v. United States,* 713 F.2d 1568, 1577–79 (Fed.Cir. 1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984), wherein the Court stated:

The difference between United States price generated from purchase price and from exporter's sales price was created by the statute. Were it not for the exporter's sales price offset, comparisons based on purchase price would be fair, yet comparisons based on exporter's sales price would be skewed in favor of a higher dumping margin. . . . In view of the discretion accorded the Secretary under the statute to make adjustments to foreign market value, we conclude that the exporter's sales price offset . . . is a proper and reasonable exercise of the Secretary's authority to administer the statute fairly.

*Id.* at 1578–79.

In addition, the Court agrees with the rationale articulated in a recent post-*Ad Hoc* case which sustained Commerce's new policy of deducting pre-sale freight in ESP compar-

isons as indirect expenses under the COS provision subject to the ESP offset cap, and in purchase price comparisons under the COS provision if they are direct selling expenses. *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States,* 18 CIT ——, ——, Slip Op. 94–151 at 6–13 (Sept. 26, 1994). In addition, the Court agrees with the rationale expressed in *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States,* 1994 WL 534945 (Sept. 26, 1994) that, in a purchase price comparison, if the presale warehousing expense is not shown to be a direct expense, then it follows that the presale freight expense is also not shown to be a direct expense.

Therefore, this Court, having considered the comments of all the parties, hereby sustains the remand results.

*Conclusion*

In accordance with the foregoing opinion, this Court, after due deliberation and a review of all papers in this action, finds that Commerce's actions were in accordance with law and supported by substantial evidence. For the reasons stated above, the Final Results are affirmed. This case is hereby dismissed.